IN THE SUPREME COURT OF THE STATE OF DELAWARE

JHALIR HENRY, §
 §
   Defendant Below, § No. 519, 2024
   Appellant, §
 §
 § Court Below: The Superior Court
   v. § of the State of Delaware
 §
STATE OF DELAWARE, § Cr. ID No. 2304008809A/B
 §
 §
   Appellee. §
 §

Submitted: September 24, 2025
Decided: December 9, 2025

Before **SEITZ**, Chief Justice; **VALIHURA**, **TRAYNOR**, **LEGROW**, and **GRIFFITHS**, Justices, constituting the Court *en Banc*.

Upon appeal from the Superior Court. **AFFIRMED**.

Patrick J. Collins, Esquire, (*argued*), COLLINS PRICE WARNER WOLOSHIN, Wilmington, Delaware, *for Defendant Below/Appellant*.

Julia M. Donoghue, Esquire, (*argued*), DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware, *for Appellee*.

**SEITZ**, Chief Justice:

On April 14, 2023, police arrested Jhalir Henry, Donregus Holland, and Shyheem Latham-Purnell for the fatal shooting of Corey Mumford. A grand jury indicted the three men for Murder First-Degree, Possession of a Firearm During the Commission of a Felony, Possession of a Firearm by a Person Prohibited, and Conspiracy First-Degree. Latham-Purnell pleaded guilty to Manslaughter and Possession of a Firearm During the Commission of a Felony. Following a six-day bench trial, the court acquitted Holland but found Henry guilty of all charges. The court denied Henry's post-trial Motion for Judgment of Acquittal. It sentenced Henry to life in prison.

On appeal, Henry focuses on the Superior Court's decision denying his Motion for Judgment of Acquittal. He raises two issues: first, whether he could be convicted of first-degree murder when the State did not prove his specific intent to kill Mumford, an unintended victim of the crime; and second, whether the State proved that he was an accomplice to first-degree murder and did not terminate his complicity before the commission of the offense.

After careful consideration, we find that this appeal should be affirmed based on accomplice liability. Thus, we do not comment on the Superior Court's other grounds for denying the motion.

I.

A.

Viewing the facts in a light most favorable to the State, on April 14, 2023, Corey Mumford was shot nine times at the Wexford Village apartment complex in Laurel, Delaware. The bullets came from a 9-millimeter Luger handgun.[1] Mumford died from his injuries.

Minutes before Mumford's death, a three-car caravan (a Mazda, an Audi, and a Volkswagen) left the Hollybrook Apartments Complex in Laurel, Delaware.[2] The caravan stopped briefly before continuing to Wexford.[3] The Volkswagen and the Audi arrived at Wexford just before the shooting.[4] The two cars backed into adjacent parking spaces in front of buildings 102 and 103.[5]

Keishaun Copes, a passenger in another car parked at Wexford, left the car, ran to the back of building 105, and warned that "Jha's spinning" or "Jha's coming."[6]

---

[1] Appendix to Appellant's Opening Br. at A171-72, A178, A194, A214-15 [hereinafter A__].

[2] A225, A706-07, A709-10; Appendix to Appellee's Answering Br. at B-4-7, B-21-23 [hereinafter B__].

[3] A877; B-23.

[4] *State v. Henry*, 2024 WL 3757156, at *2 (Del. Super. Ct. Aug. 12, 2024) [hereinafter *Henry*].

[5] A440-41; *Henry*, at *2.

[6] A285-86, A369-70; *Henry*, at *2.

Jha is Henry's nickname and spinning means shooting.[7]  Shortly after, two men left the recently parked cars and shots were fired.[8]  One man ran to the back of building 105 while the second man stayed in front of the building.[9]  The second man was identified as Henry.[10]  Henry shot into the air toward building 102.[11]  Shots were fired behind building 105.[12]  Mumford, who was behind building 105, was shot nine times.[13]  Latham-Purnell was later identified as Mumford's shooter.[14]  In addition to being seen in the front of the building, Henry was seen walking to the back or back corner of building 105.[15]  A witness testified that Henry held a firearm in one hand standing near Mumford behind building 105.[16]  A third unidentified individual was seen on the side of the building opposite the two shooters.[17]  Following the incident,

---

[7] A369-70, A374-75; B-31-32; *Henry*, at *2.

[8] A444; *Henry*, at *2.

[9] A446-51, A460; *Henry*, at *2.

[10] A444-448.

[11] A450-51, A458-59, A468-69.

[12] A254-56, A258, A281-82, A289-90, A311, A384, A507-10.

[13] A783.

[14] A415; *Henry*, at *2.

[15] A452, A471-72, A482-84; Opening Br. at 44.

[16] A509, A514-16.

[17] A380-81, A973; *Henry*, at *2-3.

the individuals ran from the back of building 105 and got into the cars parked in front of buildings 102 and 103.[18]  The cars then sped out of Wexford together.[19]

B.

The police arrested Holland, Latham-Purnell, and Henry and charged them with killing Mumford.  A grand jury eventually indicted Henry, Holland, and Latham-Purnell for Murder First-Degree, Possession of a Firearm During the Commission of a Felony, Possession of a Firearm by a Person Prohibited, and Conspiracy First-Degree.[20]  Before trial, the Superior Court severed the Possession of a Firearm by a Person Prohibited charges into a "B" case.  Latham-Purnell pleaded guilty to Manslaughter and Possession of a Firearm During the Commission of a Felony.[21]  Henry and Holland waived their right to a jury trial and agreed to a bench trial.[22]  On June 24, 2024, the Superior Court judge found Henry guilty of all charges.[23]  The court acquitted Holland of all charges.[24]

---

[18] A440-41, A519-23; *Henry*, at *2-3.

[19] A259, A262, A264, A287-89, A312, A314, A453-54.

[20] A3 at D.I. 15, A78-80. "D.I.___" refers to the Superior Court criminal docket item numbers in *State v. Jhalir Henry*, ID No. 2304008809A.

[21] A85; *Henry*, at *1.

[22] A7 at D.I. 59, A130, A133, A137-53, A186.

[23] A7-8 at D.I. 59, 64, A15 at D.I. 10.

[24] A1035, A1054; *Henry*, at *1.

## C.

Henry filed a motion for judgment of acquittal raising three grounds: (1) the State failed to prove that he intended to kill Mumford; (2) the State failed to prove that he was an accomplice to the crimes; and (3) even if he was an accomplice, Henry ended his complicity before the crime occurred. The court denied the motion. It reasoned that a defendant's culpability turns on the intent to kill, not the identity of the victim. Thus, Henry could be found guilty of first-degree murder even when he did not intend to kill Mumford.[25] The court also found that Henry's substantial involvement before, during, and after the shooting meant he was guilty of first-degree murder as an accomplice.[26] Finally, the court found that Henry did not withdraw or otherwise end his participation as an accomplice.[27] The Superior Court sentenced Henry to life in prison and additional time.

## D.

We review *de novo* a trial court's decision on a motion for judgment of acquittal.[28] Specifically, we must determine "whether any rational trier of fact, viewing the evidence and all reasonable inferences to be drawn therefrom in the light

---

[25] *Henry*, at *3-4.

[26] *Id.* at *4-5.

[27] *Id.* at *5.

[28] *Hopkins v. State*, 293 A.3d 145, 150 (Del. 2023).

6

most favorable to the State, could find the defendant guilty beyond a reasonable doubt of all the elements of the crime."[29]

## II.

As stated earlier, we have decided to resolve this appeal based on Henry's actions as an accomplice to Mumford's murder. As explained below, an accomplice to a murder can be guilty of the murder even if he did not pull the trigger. When the evidence at trial is viewed in a light most favorable to the State, we agree with the Superior Court that "[Henry] was an active participant from start to finish" in Mumford's killing and did not terminate his complicity.[30]

## A.

Under 11 *Del. C.* § 636(a)(1), a person is guilty of first-degree murder if that "person intentionally causes the death of another person[.]"[31] For accomplice liability and guilt for the underlying crime, "[a] person is guilty of an offense committed by another person when . . . [i]ntending to promote or facilitate the commission of the offense the person: [s]olicits, requests, commands, importunes or otherwise attempts to cause the other person to commit it; or [a]ids, counsels or

---

[29] *Id.*

[30] *Henry*, at *5.

[31] 11 *Del. C.* § 636(a)(1).

agrees or attempts to aid the other person in planning or committing it . . . ."[32]  Here, Henry is guilty of first-degree murder if, as an accomplice, he aided and abetted Mumford's murder.[33]

We have explained that "[t]he inquiry under § 271 is not whether each accomplice had the specific intent to commit murder, but whether he intended to promote or facilitate the principal's conduct constituting the offense."[34]  Should a murder occur and be "a foreseeable consequence of the underlying felonious conduct," one's intent as an accomplice would "include[] the intent to facilitate the happening of this result."[35]

The State introduced sufficient evidence to show Henry aided, counseled, or agreed or attempted to aid Latham-Purnell in killing Mumford.  As the Superior Court held, "[t]he plan these Defendants formulated prior to arriving is demonstrated by their actions."[36]  Before arriving at Wexford, Henry coordinated his actions with his co-conspirators.  Henry was a part of the caravan of cars that traveled from

---

[32] 11 *Del. C.* § 271(2).

[33] *Kellam v. State*, 341 A.3d 475, 497 (Del. 2025).

[34] *Hassan-El v. State*, 911 A.2d 385, 393 (Del. 2006) (citing *Claudio v. State*, 585 A.2d 1278, 1282 (Del. 1991)).

[35] *Claudio*, 585 A.2d at 1282. A "jury is not required thereafter to find that the defendants specifically intended the result of a consequential crime which occurs . . . ." *Id.*

[36] *Henry*, at *5.

8

Hollybrook to Wexford.[37] Henry left the vehicle "at approximately the same time" as the other shooters, "fired shots in the parking lot" as the other shooters went to their shooting positions, "went to the backyard or corner of building 105," and left "in a hurry" in the same vehicles.[38] Although Henry might not have shot and killed Mumford, he and Latham-Purnell were working together and without any reasonable doubt agreed beforehand to carry out a shooting that resulted in Mumford's death. Accordingly, a rational factfinder could find Henry was an accomplice to first-degree murder and, under § 271(2), was guilty of first-degree murder.

B.

Under 11 *Del. C.* § 273, an accomplice can avoid criminal liability if he "terminates [his] complicity prior to commission of the offense" and "[w]holly deprives it of effectiveness in the commission of the offense" or "[g]ives timely warning to the Attorney General or the police or otherwise makes a proper effort to prevent the commission of the offense."[39] The defendant must take affirmative steps to sever his involvement in the criminal activity. The Commentary to the 1973 Delaware Criminal Code suggests that one may "deprive his complicity of its

---

[37] A46-49, A95-96, A101-02, A706-09, A1295; *Henry*, at *5.

[38] A256-59, A262, A264, A282-90, A311-14, A438-41, A444, A449-54, A458-59, A463-65, A510, A515, A519, A522-23, A848-51; *Henry*, at *5.

[39] 11 *Del. C.* § 273.

effectiveness by taking back a weapon which he has supplied to an intending killer, or, if he has counseled commission of the offense, he may urge reconsideration and abandonment of it."[40]  In other words, a withdrawal is effective if a person's earlier help no longer meaningfully aids the offense.

Henry claims that he terminated his complicity prior to the shooting when he "stood in the parking lot doing nothing for [a] short while" and "then fired shots in the opposite direction of where Purnell was shooting Mr. Mumford."[41]  Because Henry refrained from "going straight to the backyard," he argues that he effectively withdrew and severed his complicity.[42]

Whether Henry fired in the right direction or merely stayed in front of the building as a look out, he did not terminate his involvement as an accomplice.  Henry "did not take actions to show he had abandoned his criminal purpose."[43]  To withdraw from the crimes, Henry needed to take affirmative steps, like disarming a potential shooter or urging abandonment of the crime.[44]  Physically distancing

---

[40] GOVERNOR'S COMM. ON REVISION OF THE CRIM. L., *DELAWARE CRIMINAL CODE WITH COMMENTARY* 52 (1973) [hereinafter *Del. Crim. Code with Comm.*].

[41] Opening Br. at 47.

[42] *Id.*

[43] Answering Br. at 40-41.

[44] *See Del. Crim. Code with Comm.*, at 52.  *See also Lee v. State*, 44 A.3d 922 (Table), 2012 WL 1530508, at *2 (Del. Apr. 30, 2012)  (under 11 *Del. C.* § 541 and § 273, even though the defendant told his co-conspirators that they were robbing the wrong house, the defendant did not renounce

10

himself from Latham-Purnell in the parking lot, firing in the opposite direction, and walking "partway down the path" to the back of building 105 does not demonstrate affirmative withdrawal or even an attempted withdrawal from the shooting. As explained earlier, Henry was an active participant in the events from start to finish.[45]

Henry claims that "[t]he State, like the Superior Court, places much emphasis on the cars arriving and leaving together."[46] The court, however, also considered his actions in between.[47] While Henry stood in front of building 105 as Mumford was shot and killed, his actions were coordinated with the other shooters, which included repeatedly shooting a gun and walking towards the back of building 105.[48] The

---

his participation in a robbery when he continued to participate in the robbery and shared the proceeds).

[45] A256-59, A283-92, A312-14, A375-77, A415-19, A444, A449-55, A458-59, A468-69, A470-72, A474, A482-84, A1111-12; *Henry*, at *5.

[46] Reply Br. at 15; *Henry*, at *5.

[47] *Henry*, at *5. Henry met with his conspirators prior to driving together to Wexford. The cars drove in a caravan-like manner "back-to-back" carrying the shooters before parking simultaneously. The shooters all exited their cars at the same time and walked to their respective spots. Once the shooting occurred, the shooters all departed at the same time and drove away together from Wexford. A256, A258-59, A262-64, A284-88, A312-14, A380-85, A390-94, A415, A438-43, A450-54, A458-59, A463-64, A478-80, A510-26; B-4, B-8, B-11-20, B-23, B-28.

[48] A256-59, A283-92, A312-14, A375-77, A415-19, A444, A449-55, A458-59, A468-69, A470-72, A474, A482-84, A1111-12; *Henry*, at *5.

evidence supported a reasonable inference by a rational factfinder that Henry did not effectively withdraw from his participation.[49]

Finally, the Superior Court held that Henry's conduct "did not terminate his complicity under the meaning of 11 *Del. C.* § 273" because "the plain language of the statute requires that the termination occur *prior* to the commission of the offense, not *during* it."[50] Henry argues that the "'offense' here was Mumford's shooting, not driving to Wexford Village" and that if he was ever an accomplice, he withdrew his complicity before arriving at Wexford.[51] We are unpersuaded because Henry's continued presence at the crime scene and shooting a gun in front of building 105 support an inference that he remained actively involved and had not meaningfully withdrawn. The Superior Court concluded correctly that "[Henry] was an active participant from start to finish" and did not terminate his participation in the crimes.

### III.

The judgment of the Superior Court is affirmed.

---

[49] *See Lee*, 2012 WL 1530508, at *1-2.

[50] *Henry*, at *5.

[51] Opening Br. at 48.